**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND MOBILESTAR TECHNOLOGIES, LLC | § § § § | Civil Action No. 13-cv-0895-JRG |
| Plaintiffs, | § § | **JURY TRIAL DEMANDED** |
| v. | § § § | |
| HTC CORPORATION AND HTC AMERICA, INC. | § § § § | |
| Defendants. | § § § § | |

**DEFENDANTS HTC CORPORATION'S AND HTC AMERICA, INC.'S MOTION TO
<u>TRANSFER OR, IN THE ALTERNATIVE, TO STAY</u>**

# TABLE OF CONTENTS

Page

STATEMENT OF RELEVANT FACTS ........................................................................................2

    A.    The ND Cal Android Lawsuit..............................................................................2

    B.    The Identical Patents and HTC Devices are at Issue in this Suit............................2

    C.    Google Android Witnesses and Documents are in N.D. Cal..................................3

    D.    Apple Witnesses and Documents are in N.D. Cal. ..................................................3

    E.    HTC's and Microsoft's Likely Witnesses and Documents are in Bellevue,
           Washington ...........................................................................................................4

    F.    Rockstar's Principal Place of Business is in Canada, Not Texas ...........................5

ARGUMENT .................................................................................................................................6

I.    The Most Convenient Forum for this Case is the Northern District of California. ............6

    A.    Judicial Economy Favors Transfer to N.D. Cal., Where the Real Parties in
           Interest Already Have a Case Pending Before the Forum With the Greatest
           Interest in the Issue Involved .................................................................................7

    B.    The Key Witnesses and Documents are Located in N.D. Cal. ...............................9

          1.    Google witnesses and documents .................................................9

          2.    Apple witnesses and documents ............................................................10

          3.    HTC's and Microsoft's Witnesses in Bellevue, Washington ...................11

    C.    Rockstar Has no Meaningful Connection to This Forum ......................................12

II.    In the Alternative, the Court Should Stay This Action Pending Resolution of The
    ND Cal Android Lawsuit .................................................................................................13

Conclusion ..................................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 ........................................................................................11

*Affinity Labs of Texas v. Samsung Elecs. Co.*,
   Case No. 12-557, 2013 WL 5508122 (E.D. Tex. Sept. 18, 2013) ........................................8, 9

*In re Apple Inc.*,
   456 F. App'x 907 (Fed. Cir. 2012) ........................................................................13

*DataTern, Inc., v. Staples, Inc.*,
   Case No. 10-133 at 9 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185..............................................14

*Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*,
   Case No. 08-11048, 2008 WL 2941116, (E.D. Mich. July 25, 2008) ....................................14

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)........................................................................6, 9

*Google Inc. v. Rockstar Consortium US LP*,
   Case No. 13-5833 (N.D. Cal.)....................................................................1, 2, 8, 15

*Google Inc. v. Rockstar Consortium US LP et al.*,
   Case No. 13-cv-5933 ........................................................................................1

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010)........................................................................................12, 13

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)........................................................................11

*Katz v. Lear Siegler, Inc.*,
   909 F. 2d 1459 (Fed. Cir. 1990)........................................................................13, 14

*Landis v. North Am. Co*,
   299 U.S. 248 (1936)........................................................................................14

*Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*,
   Case No. 05-123, 2006 WL 2523137 (M.D. Fla. Aug. 30, 2006) ..........................................14

*Microlinc, LLC v. Intel Corp.*,
   Case No. 07-488, 2010 WL 3766655 (E.D. Tex. Sept. 20, 2010) ..........................................15

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011)......................................................................12, 13

*Microsoft Corp. v. Geotag Inc.*,
847 F. Supp. 2d 675 (D. Del. 2012)..........................................................................14

*On Semiconductor Corp v. Hynix Semiconductor, Inc.*,
Case No. 09-390, 2010 WL 3855520 (E.D. Tex. Sep. 30, 2010) ......................9, 11

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*,
Case No. 11-53, at 4 (E.D. Tex. Feb. 10, 2012), Dkt. No. 106................................11

*Ricoh Company v. Aeroflex Inc.*,
279 F. Supp. 2d 554, (D. Del. 2003).......................................................................14

*Southwire Co. v. Cerro Wire, Inc.*,
750 F. Supp. 2d 775 (E.D. Tex. 2010).....................................................................15

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
657 F.3d 1349 (Fed. Cir. 2011)..........................................................................13, 14

*Touchscreen Gestures v. HTC*,
Case No. 12-cv-0261 (E.D. Tex. Mar. 27, 2013), Dkt. No. 17................................10

*TransUnion Intelligence LLC v. Search America, Inc.*,
Case No. 10-130, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) ................................8

*In re TS Tech*,
551 F.3d 1315 (Fed. Cir. 2008)..................................................................................8

*In re Verizon Bus. Networking Servs. Inc.*,
635 F.3d 559 (Fed. Cir. 2011)....................................................................................9

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) (en banc) ...........................................................6, 7, 11

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010).................................................................................13

**Statutes**

28 U.S.C. § 1404...........................................................................................................1

28 U.S.C. § 1404(a) ..................................................................................................6, 15

**Rules**

Fed. R. Civ. P. 45(b)(2)...............................................................................................10

Fed. R. Civ. P. 45(c)(1)(B)(ii)......................................................................................................10

Defendants HTC Corporation and HTC America, Inc. (collectively, "HTC") request, pursuant to 28 U.S.C. §1404, that this case be transferred to the Northern District of California for purposes of judicial economy and convenience to the witnesses.  The seven patents and the Android operating system accused  in this case are squarely at issue in *Google Inc. v. Rockstar Consortium US LP et al.,* Case No. 13-cv-5933, currently pending before Chief Judge Claudia Wilken in the Northern District of California (the "ND Cal Android Lawsuit").  The key witnesses in both cases will be Google engineers who develop the Android platform accused of infringing the asserted patents, and Apple witnesses who were involved in Apple investing 58% of the purchase price for the Nortel Networks ("Nortel") patent portfolio that included the asserted patents.  These key witnesses, and their documents, are located at Google in Mountain View, California, and at Apple, in Cupertino, California, both within the Northern District of California.  HTC  witnesses and documents are located in the Bellevue, Washington, which is a two-hour flight to the Northern District of California, allowing for a same-day roundrip to attend trial, rather than a four-hour flight, two-and-a-half hour rental car trip and overnight stay to the Eastern District of Texas.  Witnesses for plaintiffs Rockstar Consortium U.S. LLP and Mobilestar LLC (collectively "Rockstar") are based principally in Canada, which is equally inconvenient to Texas and California.

The issue in both this case and the pending ND Cal Android Lawsuit is whether the Android platform used in HTC devices infringes the seven asserted patents.  In view of this fact, at the very least, this case should be stayed under the customer suit exception until the ND Cal Android Lawsuit is finally resolved.

## STATEMENT OF RELEVANT FACTS

### A.      The ND Cal Android Lawsuit

Google's Android platform used in HTC's devices is at the heart of the ND Cal Android Lawsuit.  The complaint specifically identifies HTC as one of Google's customers that uses the Android platform in its devices.   (Declaration of Curt Holbreich ("Holbreich Decl."), filed concurrently herewith, Ex. 1, ¶ 17 (*Google Inc. v. Rockstar Consortium US LP*, Case No. 13-5833 (N.D. Cal.), Complaint).)   The complaint asserts that no version of Google's Android platform directly or indirectly infringes any of United States Patent Nos. 5,838,551 (the "'551 patent"), 6,037,937 (the "'937 patent"), 6,128,298 (the "'298 patent"), 6,333,973 (the "'973 patent"), 6,463,131 (the "'131 patent"), 6,765,591 (the "'591 patent") and 6,937,572 (the "'572 patent").  (*Id.* at ¶¶ 25, 27-67.)

### B.      The Identical Patents and HTC Devices are at Issue in this Suit

Google's Android platform is also at the heart of Rockstar's case against HTC.  In their Amended Complaint, plaintiffs Rockstar Consortium US LP and MobileStar Technologies LLC (collectively, "Rockstar") allege that HTC makes, uses, tests, sells, offers to sell, imports, exports, supplies and/or distributes "HTC Mobile Communication Devices" in the United States. (Dkt. No. 23 ¶¶ 16, 18, 28, 32, 44, 48, 59, 65, 74, 79, 89, and 104.)   Rockstar defines these allegedly infringing HTC Mobile Communication Devices as "certain mobile communication devices having a version (or an adaptation thereof) of Android operating system."  (*Id.* at ¶ 15.) The accused HTC devises, using the Android platform, are accused of infringing the same seven patents at issue in the ND Cal Android Lawsuit – the '551 patent, the '937 patent, the '298 patent, the '973 patent, the '131 patent, the '591 patent and the '572 patent.  (*Id.* at ¶¶ 8-14.)

### C.     Google Android Witnesses and Documents are in the Northern District of California

As explained more fully in Google's separate motion to stay or to transfer this case to Northern District of California,[1] Google has been headquartered in Mountain View, California, since its founding in 1998.   (Holbreich Decl., Ex. 2, ¶¶ 4-6 (Declaration of Abeer Dubey ("Dubey Decl.")).)   The Android platform at issue originates with Google, which supervises "the design and production" of Android in Mountain View, California.   (*Id.* at ¶ 5.)   Google witnesses are concentrated in the San Francisco Bay Area, including engineers responsible for the research, design and development of the accused Android features.   (*Id.* at ¶¶ 7, 8.)   Google's design and development documents are managed and maintained from Google's headquarters in California. (*Id.* at ¶ 12.)

### D.     Apple Witnesses and Documents are in the Northern District of California

Apple is headquartered in Cupertino, California, also in the heart of the Northern District of California.   Apple paid the majority share of the purchase price for the 6,000+ patent portfolio sold by Nortel Networks in 2011 that included the asserted patents.   As Apple reported in its June 25, 2012 10-Q, Apple paid $2.6 billion of the total $4.5 billion purchase price, which is 58% of the total purchase price.   (Holbreich Decl., Ex. 3, p. 34 (Apple 10Q).)   Thus, information from Apple will be key to important issues in this case, such as license defenses and damages.

For example, during the bidding process, Nortel provided Apple access to Nortel's documents relating to the patents in suit.   (Holbreich Decl., Ex. 9, ¶¶ 17-18 (Seventy-First Report of the Monitor).)   Apple employees had an opportunity to review the documents and to place a value on each of the asserted patents.   (*Id.*)   The documents Apple reviewed and Apple's

---

[1] *Rockstar Consortium US LP et al. v. Samsung Electronics Co., LTD, et al.*, E.D. Tex. Case No. 13-cv-00900, Dkt. No. 52.

valuations, along with each of the Apple witnesses involved in the bidding process, will be important evidence in the case.

Throughout the bidding process, Apple was represented by Kyle Krpata of the Weil Gotshal law firm in Redwood Shores, California, which also is located within the Northern District of California.  (Holbreich Decl. Ex. 4 (Weil Gotshal web page).)  Pursuant to section 10.7 of the asset sale agreement, Mr. Krpata and his colleagues in Redwood Shores, California, were to receive all demands, notices, communications and reports provided for in the agreement. (Holbreich Decl. Ex. 9, section 10.7 (Appendix B to Seventy-First Report of the Monitor).)  Mr. Krpata and his colleagues in Redwood Shores, California, will be key witnesses on the value of the asserted patents and the transaction in which they were purchased from Nortel.  Documents maintained by Mr. Krpata and his colleagues in Redwood Shores, California, will figure prominently in the supposed valuation of the patents-in-suit.

### E.      HTC's Likely Witnesses and Documents are in Bellevue, Washington

HTC Corporation is a Taiwanese company with its principal place of business in Taiwan, ROC.  (Declaration of Stephanie Bariault in Support of Defendants' Motion to Transfer or, in the Alternative, Stay ("Bariault Decl."), filed concurrently herewith, ¶ 2.)  HTC America, Inc. is incorporated in the State of Washington and has its principal place of business in Bellevue, Washington. (*Id.*)  HTC's documents and witnesses related to the accused products are located in Bellevue, Washington; Seattle, Washington; San Francisco, California; and Taiwan, ROC.  (*Id.* at ¶¶ 8-11.)  There are no HTC documents and no HTC witnesses located in Texas.  (*Id.* at ¶¶ 9-10.)

It is less costly and more convenient for witnesses based in Bellevue, Washington, to travel two hours by air to the Northern District of California and return the same day, than to

travel four hours to Dallas / Fort Worth, then drive another two-and-a-half hours to the Eastern District of Texas, and have to stay overnight. (Bariault Decl., at ¶¶ 17-19, 22-24, 27.)

**F.      Rockstar's Principal Place of Business is in Canada, Not Texas**

Plaintiffs Rockstar Consortium US LP and MobileStar LLC claim to have their principal place of business in Texas. (Dkt. No. 23, ¶¶ 1-2.) Rockstar Consortium's own public records reveal that its principal place of business actually is in Ottawa, Canada.

For instance, the bulk of Rockstar Consortium's employees, including its senior management, are based in Ontario, Canada:



(Holbreich Decl., Ex. 6, ¶ 16 (Declaration of Kristin J. Madigan ("Madigan Decl.")).) Of these ten members, five work in Canada; one each in California, Colorado, Massachusetts, New York, and Pennsylvania; and none in Texas. (*Id.* at ¶¶ 15-19.) In addition to its senior management, Rockstar Consortium lists on its website six "Corporate Leaders," none of whom are in Texas. (*Id.* at ¶ 20.)

Rockstar Consortium's documents confirm its Canadian roots and lack of a Texas connection. During pre-suit communications with HTC, Rockstar Consortium sent a letter on stationery that identified Rockstar Consortium as located at 300-515 Legget Drive, Kanata, Ontario, K2K 3G4 Canada. (Holbreich Decl., Ex. 7 (Rockstar Consortium Correspondence).) The letter was sent by Afzal Dean, who provided an office telephone number, a mobile telephone

number, and a facsimile number all in the 613 area code.  (*Id.*)  The 613 area code is for Ontario, Canada.  (*Id.*).  This is consistent with a March 12, 2012, Rockstar Consortium news release that was included with Mr. Dean's letter.  The news release has an Ottawa, Canada dateline.  (Holbreich Decl., Ex. 8 (Rockstar Consortium Press Release).)

Rockstar Consortium's true Canadian principal place of business is further confirmed by its transfer of five of the patents-in-suit from Rockstar Consortium to MobileStar.[2]  This critical transaction was executed on the day this suit was filed by two members of Rockstar Consortium's senior management *in Canada*—duly witnessed and notarized by Rockstar Consortium's *Canadian* corporate counsel.  (Holbreich Decl., Ex. 6, ¶ 21 (Madigan Decl.).)

Plaintiff MobileStar did not even register with the Texas Secretary of State, as required by law, until more than a month later.  (Dkt. No. 20, 2-4.)  Moreover, MobileStar has no known employees.  It is nothing more than a corporate shell created the day before this suit was filed for the sole purpose of holding certain ownership and licensing rights in the seven asserted patents.

<u>ARGUMENT</u>

**I.    The Most Convenient Forum for this Case is the Northern District of California**

The two critical factors in determining the most convenient forum in this case are judicial economy and the location of key witnesses and documents.  Here, both of these factors point decidedly in favor of the Northern District of California.

For "the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (citing *In re*

---

[2]    The following asserted patents were transferred from Rockstar Consortium to MobileStar:  the '937 patent; the '973 patent; the '131 Patent; the '591 Patent; and the '572 Patent.

*Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")).  In evaluating whether the proposed transferee forum is sufficiently more convenient, courts look to "private" and "public" interest factors:

> The private interest factors are:  (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  The public interest factors are:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Volkswagen II*, 545 F.3d 304, 315 (5th Cir. 2008) (citation omitted).  Prior to evaluating the private and public interest factors the Court must first determine "whether a civil action 'might have been brought' in the destination venue."  *Volkswagen II*, 545 F.3d at 312.

In this case, defendants HTC Corp. and HTC America both are subject to jurisdiction in the Northern District of California, thereby satisfying this threshold issue.  (Bariault Decl., ¶¶ 9, 11, 12.)  On both of the critical factors for the transfer test – judicial economy (public interest factor 1) and the location of witnesses and documents (private interest factors 1, 3, and 4) – the Northern District of California is, by far, the clearly more convenient forum.[3]

A.   **Judicial Economy Favors Transfer to N.D. Cal., Where the Real Parties in Interest Have a Case Pending Before the Forum With the Greatest Interest in the Issues Involved**

This case is about the Android platform on which the HTC devices operate.  For each of the seven asserted patents, Rockstar alleges that HTC makes, uses, tests, sells, offers to sell,

---

[3]  Public interest factor No. 2, having localized interests decided at home, is addressed in Section I.A., *supra,* which explains that the Northern District of California has a favored interest in resolving this issue.  Section I.C, *supra*, explains that Rockstar has no real interest in the Eastern District of Texas.  Public interest factors Nos. 3 and 4, familiarity with the governing law and conflicts of laws issues also are neutral.  Private interest factor No. 2, the availability of compulsory process favors transfer to the Northern District of California, as explained in Section I.B.2, *supra*.

imports, exports, supplies and/or distributes "HTC Mobile Communication Devices" within the United States.  (Dkt. No. 23, ¶¶ 16, 18, 28, 32, 44, 48, 59, 65, 74, 79, 89, and 104.)  Rockstar defines these allegedly infringing HTC Mobile Communication Devices as "certain mobile communication devices having a version (or an adaptation thereof) of Android operating system." (*Id.* at ¶ 15.)

Google, the designer of the accused Android platform, and Rockstar are currently engaged in a lawsuit in the Northern District of California involving the same Android platform and the same seven patents.  The complaint in the ND Cal Android Lawsuit specifically identifies HTC as a Google customer that uses the Android platform in its devices. (Holbreich Decl., Ex. 1, ¶ 17 (*Google Inc. v. Rockstar Consortium US LP*, Case No. 13-5833 (N.D. Cal.), Complaint).)  The complaint asserts that no version of Google's Android platform used in the HTC devices directly or indirectly infringes any of the seven asserted patents.  (*Id.* at ¶ 25.)  It would be an unnecessary waste of judicial resources to proceed with this case when the same patents and the same Android platform already are at issue between the real parties in interest in the Northern District of California.

As previously recognized by this Court, "[t]he Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley."  *Affinity Labs of Texas v. Samsung Elecs. Co.*, Case No. 12-557, 2013 WL 5508122, *3 (E.D. Tex. Sept. 18, 2013).  This includes the Android platform, which is designed and developed by Google in Mountain View, California.  (Holbreich Decl., Ex. 2,  ¶ 5 (Dubey Decl.).)  By contrast, this District's interest is much more tenuous.  Rockstar alleges only a single

connection to this District – its asserted principal place of business; but, as explained in Section I.C, *supra*, the real locus of its business is in Canada.[4]

This case has only just begun. Transfer at this early stage would avoid the unnecessary waste of judicial resources. *TransUnion Intelligence LLC v. Search America, Inc.*, Case No. 10-130, 2011 WL 1327038, at *5 (E.D. Tex. Apr. 5, 2011). Even if this case has progressed by the time the instant motion is heard, the Local Patent Rules of this District were patterned on the Local Patent Rules of the Northern District of California, meaning any work the parties have done in this District will not be wasted. *Affinity Labs of Texas*, 2013 WL 5508122, *3.

### B.    The Key Witnesses and Documents are Located in N.D. Cal.

The pending ND Cal Android Lawsuit is a strong factor favoring transfer to the Northern District of California. But there is more. The key witnesses and documents are located in the Northern District of California. The Federal Circuit has recognized that the convenience of the witnesses is "probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343; *In re Verizon Bus. Networking Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011); *Hynix*, 2010 WL 3855520, at *5 (citing *Genentech*, 566 F.3d 1343). Here, the critical third-party Google and Apple witnesses and documents all are located in the Northern District of California.

### 1.    Google witnesses and documents

Rockstar focused its allegations on the Android platform by defining the allegedly infringing HTC Mobile Communication Devices as "certain mobile communication devices having a version (or an adaptation thereof) of *Android operating system*." (Dkt. No. 23, ¶ 15)

---

[4] Additionally, the allegedly infringing devices are "sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue." *In re TS Tech*, 551 F.3d 1315, 1321 (Fed. Cir. 2008).

(emphasis added.)   Virtually all of the documentary and testimonial evidence relevant to Rockstar's claims resides in the Northern District of California.

Google designs and produces the Android platform from its headquarters in in Mountain View, California.   (Holbreich Decl., Ex. 2, ¶¶ 4-6 (Dubey Decl.).)   The relevant Google witnesses are located in the San Francisco Bay Area, including engineers responsible for the research, design and development of the accused Android features.   (*Id.* at ¶¶ 7, 8.)   The relevant Google documents, including those pertaining to design and development of Android, are managed and maintained from Google's headquarters in Mountain View, California.   (*Id.* at ¶ 12.)   This Court recently ordered transfer to the Northern District of California on remarkably similar facts.   *Touchscreen Gestures v. HTC*, Case No. 12-cv-0261 (E.D. Tex. Mar. 27, 2013), Dkt. No. 17 (granting motion to transfer in suit against Google OEM, HTC, where Court found that the Northern District of California was more convenient for Google's witnesses and Google's documents were more easily accessed in that forum).

### 2.     Apple witnesses and documents

Documents and witnesses from Apple – one of the two main founding entities behind Rockstar – will be key to important issues in this case.   Apple had a majority interest in the purchasing of the Nortel patent portfolio, including the asserted patents.   (Holbreich Decl., Ex. 3, p. 34 (Apple 10Q).)   Apple had access to Nortel's documents relating to the patents in suit. (Holbreich Decl., Ex. 9, ¶¶ 17-18 (Seventy-First Report of the Monitor).)   Most importantly, Apple employees had an opportunity to review the documents and to place a value on each of the asserted patents.   (*Id.*)   The documents Apple reviewed and Apple's valuations, along with each of the Apple witnesses involved in the bidding process, will be important evidence in the case. These documents presumably reside in Cupertino, California.   Apple's counsel during the bidding process, Mr. Krpata and his colleagues in Redwood Shores, California, also will be key

witnesses on the value of the asserted patents and the transaction in which they were purchased. (Holbreich Decl., Ex. 4 (Weil Gotshal web page).)

It is true that both this Court and the Northern District of California can issue nationwide deposition subpoenas under Fed. R. Civ. P. 45(b)(2).  But each Court can only compel the trial attendance of non-party witnesses residing within the state where the Court sits.  Fed. R. Civ. P. 45(c)(1)(B)(ii).  Only the court in the Northern District of California has the authority to compel live testimony at trial from important, but potentially unwilling, trial witnesses in Silicon Valley, such as non-party Apple and Google employees.  Live testimony from these witnesses at trial, rather than canned videotape clips, is a key strategic factor for HTC.[5]

### 3.     HTC's Witnesses in Bellevue, Washington

HTC's likely witnesses are located in Taiwan, and in Bellevue, Washington.  (Bariault Decl., ¶¶ 8, 10, 11, 14, 15, 16.)  These witnesses include employees responsible for the research, design, development, marketing and sales of the accused products.  (*Id.*)  There are no expected HTC witnesses located in the Eastern District of Texas.  (*Id.* at ¶ 10.)  The Northern District of California is a less costly and more convenient forum for HTC's Washington-based witnesses to travel to than the Eastern District of Texas.  (*Id.* ¶¶ 17-19, 22-24, 27.)

Additionally, HTC's relevant documents are managed and maintained in Taiwan, Washington State and San Francisco, California.  (*Id.* at ¶¶ 9, 11.)  By contrast, no relevant HTC or Rockstar documents are located in Texas.  (*Id.*); *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 872 (E.D. Tex. 2013 ("documents relocated in anticipation of litigation are not considered.") (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-7 (Fed. Cir. 2009)).

---

[5] Importantly, the court in Northern District of California also has the authority to compel live trial testimony from relevant prior art inventors, dozens of whom live in the Northern District.  (Holbreich Decl., Ex. 5,  ¶ 3 (Declaration of Dale Jachlewski ("Jachlewski Decl.")).)

"The volume of physical evidence located in, or closer to, the transferee forum" is significant "especially when no physical evidence is located in Texas." *Phil-Insul Corp. v. Reward Wall Sys., Inc.*, Case No. 11-53, at 4 (E.D. Tex. Feb. 10, 2012), Dkt. No. 106; *On Semiconductor Corp v. Hynix Semiconductor, Inc.*, Case No. 09-390, 2010 WL 3855520, at *2 (E.D. Tex. Sep. 30, 2010) (citing *Volkswagen II*, 545 F.3d at 314-15).

### C.    Rockstar Has no Meaningful Connection to This Forum

Although both Rockstar Consortium LP and MobileStar claim their principal place of business is in this District, the facts prove otherwise.  (Statement of Relevant Facts, *supra*, Section F)  Further, during pre-suit communications with HTC, Rockstar sent a letter on stationery that identified Rockstar Consortium US LP as located at 300-515 Legget Drive, Kanata, Ontario, K2K 3G4 Canada.  (Holbreich Decl., Ex. 7 (Rockstar Consortium Correspondence).)  The letter was sent by Afzal Dean, who provided an office telephone number, a mobile telephone number and a facsimile number all in the 613 area code. (*Id.*)  The 613 area code is for Ontario, Canada.  (*Id.*)  This is consistent with a March 12, 2012, news release from Rockstar Consortium US LP that was included with Mr. Dean's letter.  That news release has an Ottawa, Canada dateline.  (Holbreich Decl. Ex. 8 (Rockstar Consortium Press Release).)

The Supreme Court has defined "principal place of business" as "the place where a corporation's officers direct, control, and coordinate the corporation's activities," also known as "the corporation's 'nerve center.'"  *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010).  Citing *Hertz Corp.*, the Federal Circuit has transferred similar cases out of this District.  *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (granting mandamus and reminding that courts should, if "the record reveals attempts at manipulation" regarding the principal place of business, "take as the 'nerve center' the place of actual direction, control, and coordination, in the absence

of such manipulation."); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (noting that *Hertz Corp.* urges "courts to ensure that the purposes of jurisdiction and venue laws are not frustrated by a party's attempts at manipulation," and finding the patentee's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation."). "Courts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient.'" *In re Apple Inc.*, 456 F. App'x 907, 908-09 (Fed. Cir. 2012) (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011)).

Moreover, no relevant non-party witnesses appear to reside in the Eastern District of Texas. The Court should grant transfer where, as here, the present District "is convenient only for [plaintiff]'s litigation counsel." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

## II. In the Alternative, the Court Should Stay This Action Under the Customer-Suit Exception, Pending Resolution of The ND Cal Android Lawsuit

Because the ND Cal Android Lawsuit will answer many, if not all, of the central questions at issue here, the Court should, in the alternative, stay this case under the customer-suit exception and allow that action to proceed to judgment. In the interest of judicial efficiency and to guard against abuse, "'litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'" *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Katz v. Lear Siegler, Inc.*, 909 F. 2d 1459, 1464 (Fed. Cir. 1990)). The manufacturer's case need not resolve every issue in the customer suits; it "need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of the customer suits." *Spread Spectrum*, 657 F.3d at 1358 (citing *Katz*, 909 F.2d at 1464). The ND Cal Android Lawsuit meets this test.

The Android platform originates with Google, which supervises "the design and production" of Android and thus is "in the best position to defend its own products." *Delphi Corp. v. Auto. Tech.'s Int'l, Inc.*, Case No. 08-11048, 2008 WL 2941116, at *5 (E.D. Mich. July 25, 2008); *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 681 (D. Del. 2012) (finding "the real dispute" was between the patentee and defendants Microsoft and Google, rather than customers who featured Microsoft and Google mapping services on their websites).  The ND Cal Android Lawsuit should  resolve "major issues" and will simplify this litigation, and may obviate the need for it altogether.  *Spread Spectrum*, 657 F.3d at 1358; *DataTern, Inc., v. Staples, Inc.*, Case No. 10-133 at 9 (E.D. Tex. Feb. 12, 2012), Dkt. No. 185 (staying customer suits in favor of declaratory judgment action brought by software developers in New York because "'in all likelihood [the New York cases] will settle many [issues] and simplify them all.'" (quoting *Landis v. North Am. Co*, 299 U.S. 248, 256 (1936) (alterations in original)).

At a minimum, the ND Cal Android Lawsuit should resolve whether Google's Android platform infringes the asserted patents, which "will efficiently dispose of the infringement issues" present in this case, *Ricoh Company v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003), and should promote judicial economy by encouraging "global" resolution rather than "piecemeal litigation."  *Delphi Corp.*, 2008 WL 2941116 at *5; *Ricoh*, 279 F. Supp. 2d at 557 ("it is more efficient for the dispute to be settled directly between the parties in interest"); *see also Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, Case No. 05-123, 2006 WL 2523137, at *2 (M.D. Fla. Aug. 30, 2006) (stay will "preserve judicial resources, prevent duplicative expenses,

and prevent the possibility of inconsistent judgments").   The Court should stay this action

pending resolution of the ND Cal Android Lawsuit.[6]

## **CONCLUSION**

For the foregoing reasons, HTC respectfully requests that this Court transfer this case to

the Northern District of California, pursuant to 28 U.S.C. § 1404(a) or, in the alternative, stay

this case pending resolution of the *Google v. Rockstar* lawsuit currently pending in the Northern

District of California.


Respectfully submitted,

Dated: March 26, 2014                          K&L GATES LLP

By:   */s/ Michael J. Bettinger*
      Michael J. Bettinger (*Pro Hac Vice*)
      Lead Attorney
      California State Bar No. 122196
      mike.bettinger@klgates.com
      Curt Holbreich
      California State Bar No. 168053
      curt.holbreich@klgates.com
      **K&L Gates LLP**
      4 Embarcadero Center, Suite 1200
      San Francisco, California 94111
      Telephone:  (415) 882-8200
      Facsimile:  (415) 882-8220

      Steven G. Schortgen
      Texas State Bar No. 00794603
      steve.schortgen@klgates.com
      **K&L Gates LLP**

---

[6]  This Court also should stay this action under its inherent authority because this case is in its early stages, a stay will simplify the issues, *see supra* at 5, and will not prejudice Rockstar. *See Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 778-80 (E.D. Tex. 2010). Rockstar is a non-practicing entity that can be fully compensated with damages. *Microlinc, LLC v. Intel Corp.*, Case No. 07-488, 2010 WL 3766655, at *2 (E.D. Tex. Sept. 20, 2010).

1717 Main St.
Suite 2800
Dallas, Texas  75201
214.939.5500
214.939.5849 Facsimile

Attorneys for Defendants
HTC CORPORATION and
HTC AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2014, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Marshall Division, using the electronic case filing system of the court in compliance with Local Rule CV-5(a).  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Michael J. Bettinger*
Michael J. Bettinger

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed.  Hal Davis, on behalf of counsel for HTC Defendants, conferred in good faith with Josh Budwin, counsel for Plaintiffs by telephone on March 25, 2014.  The parties reached an impasse when Plaintiffs' Counsel stated that it opposes Defendants' Motion to Transfer, or in the Alternative to Stay, leaving an open issue for the Court to resolve.

*/s/ Michael J. Bettinger*
Michael J. Bettinger

16